**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| J.R. KLEIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIG INN RESTAURANT GROUP LLC d/b/a DIG INN,<br><br>Defendant. | Case No. 1:26-cv-3236-MKV<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff J.R. KLEIN ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant DIG INN RESTAURANT GROUP LLC d/b/a DIG INN (hereinafter "Dig Inn" or "Defendant").

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of Dig Inn arising from Defendant's deceptive "fee camouflaging" scheme on its digital ordering platform. Defendant intentionally obscures its own corporate operating costs by secretly bundling them into a checkout line item labeled "Taxes and fees."

2. Reasonable consumers understand "taxes" to be non-negotiable, government-mandated levies. By grouping its internal corporate overhead into this exact same line item, Defendant exploits the mandatory nature of taxes to deceive consumers about the true cost of its food and services.

3. The deception is mathematical and deliberate. When a consumer orders food for in-store pickup, Defendant's "Taxes and fees" line item contains only applicable government taxes.

However, when a consumer orders the exact same food for delivery, Defendant uses the identical "Taxes and fees" label but secretly inflates the line item charge with its own corporate service fees.

4. Defendant frequently advertises a "$0.00 Delivery fee" on the checkout screen to induce the transaction, relying on the bundled "Taxes and fees" line item to quietly extract the true cost of delivery from the consumer.

5. Plaintiff brings this action individually and on behalf of a Nationwide Class to recover damages for Breach of Contract and Unjust Enrichment, and on behalf of a New York Subclass to halt Defendant's deceptive pricing architecture and to recover statutory damages, including treble damages for willful violations, under New York General Business Law ("GBL") §§ 349 and 350.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative Class members; and at least one member of the proposed Class is a citizen of a different state than Defendant.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts substantial business within this District, operates numerous retail locations within this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

8. Plaintiff J.R. Klein is a citizen and resident of New York County, New York, who placed a delivery order through Defendant's digital platform in April 2026.

9. Defendant Dig Inn Restaurant Group LLC is a Delaware limited liability company with its headquarters and principal place of business located at 1235 Broadway, 2nd Floor, New York, New York 10001.

## FACTUAL ALLEGATIONS

***The "Tax Camouflage" Architecture***

10. Defendant operates a proprietary digital ordering platform (powered by the "Olo" white-label engine) accessible via its mobile application and website.

11. When a consumer selects food items and proceeds to the final checkout screen, Defendant presents an itemized receipt detailing the Subtotal, any applicable delivery charges, and a line item explicitly labeled "Taxes and fees".

12. To a reasonable consumer, the presentation of a "Taxes and fees" line item at the bottom of a restaurant receipt signifies government-imposed sales taxes and legally mandated local surcharges.

13. Defendant actively exploits this expectation by altering the mathematical reality of the "Taxes and fees" line depending on the fulfillment method, while keeping the UI label identical.

14. For an in-store pickup order, the "Taxes and fees" line is a pure tax calculation. For example, an order for two "Charred Chicken & Rice" bowls with a subtotal of $19.90 placed at Defendant's Murray Hill location in New York generates a "Taxes and fees" charge of exactly $1.77. This amount strictly represents the 8.875% New York City sales tax.

15. However, when a consumer places an order for the exact same items (i.e., two "Charred Chicken & Rice bowls") from the exact same location for delivery, the pricing structure changes deceptively.

16. On the delivery checkout screen, Defendant explicitly presents a "Delivery fee" of "$0.00".

17. Immediately below this representation, Defendant assesses a charge of $3.94 under the identical "Taxes and fees" label.




***Pickup***




***Delivery***

18. The government tax rate does not change based on delivery. The $2.17 discrepancy between the pickup tax ($1.77) and the delivery "Taxes and fees" ($3.94) is Defendant's hidden corporate service and delivery markup.

19. By burying its own administrative overhead inside a line item anchored by the word "Taxes," and simultaneously promoting a $0.00 delivery fee, Defendant intentionally creates a false impression of a government mandate to override the consumer's price sensitivity.

20. Defendant's failure to isolate its corporate fees from government taxes is a deceptive dark pattern designed to artificially deflate the perceived cost of its menu items while secretly protecting its profit margins at checkout.

***Plaintiff's Experience***

21. On April 14, 2026, Plaintiff utilized Defendant's digital platform to order food for delivery to his residence in New York, New York. The subtotal for Plaintiff's food was $15.45, and Plaintiff elected to leave a $1.55 tip.

22. Consistent with Defendant's uniform platform architecture, Defendant presented Plaintiff with a pre-purchase checkout screen that advertised a "$0.00" Delivery fee while secretly bundling a corporate markup with the applicable government sales tax into a single line item labeled "Taxes and fees" in the amount of $3.54.

23. Relying on this uniform presentation, Plaintiff reasonably believed the $3.54 charge consisted solely of legitimate state and local government mandates. Plaintiff authorized the transaction, and Defendant subsequently charged Plaintiff's payment method a total of $20.54 (comprising the $15.45 subtotal, the $1.55 tip, and the $3.54 deceptive charge).

24. The $3.54 "Taxes and fees" charge was mathematically false and deceptive. As confirmed by an automated email receipt generated by Defendant's own system post-purchase, the actual sales tax for the transaction was only $1.55.

25. The remaining $1.99 was a hidden corporate "Service Fee" that Defendant actively camouflaged under the "Taxes and fees" label during checkout to induce the transaction.

26. Defendant's deliberate obfuscation is further evidenced by its own digital platform history. When Plaintiff views this exact same transaction within his user account, Defendant's interface drops the $1.99 fee entirely, displaying an itemized receipt that sums to $18.55 but deceptively reports a final charge of $20.54.

27. Had Plaintiff known that the pre-purchase "Taxes and fees" line contained a hidden corporate markup, he would not have completed the transaction or would have paid less for it.

## CLASS ALLEGATIONS

28. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

29. The proposed Class is defined as follows:

> **Nationwide Class:** All persons who, within the applicable statute of limitations period, placed a delivery order through Defendant's digital platform and were assessed a "Taxes and fees" charge that included non-governmental corporate fees.
>
> **New York subclass:** All persons who, within the applicable statute of limitations period, placed a delivery order through Defendant's digital platform in the State of New York and were assessed a "Taxes and fees" charge that included non-governmental corporate fees.

30. Plaintiff reserves the right to modify, change, or expand the definitions of the proposed Classes based upon discovery and further investigation.

31. *Numerosity:* The proposed Class is so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members as described above who have been damaged by Defendant's illegal, deceptive, and misleading practices.

32. *Commonality:* Questions of law or fact common to the Class include, without limitation:

a. Whether Defendant's practice of bundling corporate operational fees with government taxes is materially misleading;

b. Whether the uniform label "Taxes and fees" constitutes false advertising when applied to internal corporate overhead;

c. Whether Defendant breached its Terms of Use by failing to provide adequate notice of these charges;

d. Whether Defendant's uniform checkout interface violates GBL §§ 349 and 350;

e. Whether Defendant's conduct was willful and knowing; and

f. Whether Defendant was unjustly enriched;

33. *Typicality:* Plaintiff's claims are typical of the Class because all members were subjected to the identical, uniform checkout interface.

34. *Adequacy:* Plaintiff will fairly and adequately represent the Class and has retained counsel experienced in complex class action litigation.

35. *Predominance:* Questions of law or fact common to proposed Class members predominate over any questions affecting only individual members. Common questions such as whether Defendant misled Plaintiff and the Class and whether Defendant did so willfully predominate over individual questions such as measurement of economic damages.

36. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of the Class is impracticable. Many members of the Class are without the financial resources necessary to pursue this matter. Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale, and comprehensive supervision over the entire controversy by a single judge in a single court.

37. *Manageability:* Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

38. The Class may be certified pursuant to Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

39. The Class may also be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the Class will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

40. Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Contract**
**(On behalf of Plaintiff and the Nationwide Class)**

41. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

42. Defendant and consumers like Plaintiff entered into a contract for Defendant's products and/or services, via Defendant's Terms of Use.

43. Defendant's Terms of Use constitute a valid, binding contract between Defendant, Plaintiff, and the Nationwide Class. Because these Terms were drafted exclusively by Defendant and presented to consumers on a non-negotiable, take-it-or-leave-it basis, any ambiguity regarding the contractual definition of 'notice' must be strictly construed against Defendant.

44. Defendant's Terms of Use expressly promise that Defendant "will provide notice of the charges applicable to you before you make your purchase."

45. Defendant breached this agreement, and its own Terms of Use, by failing to provide notice of its corporate operational and delivery charges, instead actively camouflaging those charges within a bundled "Taxes and fees" line item while simultaneously advertising a "$0.00 Delivery fee."

46. Contractual "notice" carries an inherent obligation of accuracy and good faith. Displaying a fabricated, artificially inflated number under a false government-mandated label actively camouflages the nature of the charge, nullifying any valid contractual notice.

47. As a direct and proximate result of Defendant's breach, Plaintiff and the Nationwide Class suffered damages in the amount of the hidden corporate fees.

**SECOND CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Pled in the Alternative on behalf of Plaintiff and the Nationwide Class)**

48. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

49. Defendant received a direct financial benefit from Plaintiff and the Nationwide Class in the form of disguised corporate and operational fees extracted during the checkout process.

50. Defendant appreciated, accepted, and retained this benefit.

51. It would be inequitable and unjust for Defendant to retain this benefit because it was obtained through a deceptive, uniform platform architecture designed to obscure the true cost of the transaction from the consumer.

52. Pursuant to Federal Rule of Civil Procedure 8(d)(2), Plaintiff pleads this Unjust Enrichment claim in the alternative. Defendant has not yet answered this Complaint, nor has it

conceded that its Terms of Use constitute a valid, enforceable contract that governs the specific deceptive conduct alleged herein.

53. Furthermore, this alternative equitable relief is necessary to protect the members of the Nationwide Class who, unlike the New York Subclass, do not possess a viable statutory remedy under the New York General Business Law for Defendant's deceptive practices.

**<u>THIRD CAUSE OF ACTION</u>**
**Violation of New York GBL § 349**
**(On behalf of Plaintiff and the New York Subclass)**

54. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

55. GBL § 349 declares unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

56. Defendant's practice of camouflaging corporate administrative and delivery expenses within a "Taxes and fees" line item constitutes a materially misleading consumer-oriented practice within the State of New York.

57. As a direct result of Defendant's deceptive acts, Plaintiff and the New York Subclass suffered an ascertainable loss.

**<u>FOURTH CAUSE OF ACTION</u>**
**Violation of New York GBL § 350**
**(On behalf of Plaintiff and the New York Subclass)**

58. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59. GBL § 350 declares unlawful "false advertising in the conduct of any business, trade or commerce."

60. Defendant's uniform, platform-wide use of the label "Taxes and fees" for delivery orders is false and misleading because it explicitly characterizes internal corporate overhead as a tax-adjacent mandate.

61. Defendant's false labeling was consumer-oriented, materially misleading, and resulted in injury to Plaintiff and the New York Subclass.

62. Defendant's actions were willful and knowing. Defendant actively programmed its point-of-sale system to accurately assess pure taxes for pickup orders while secretly baking corporate markups into the exact same line item for delivery orders.

63. Plaintiff and the New York Subclass are entitled to recover actual damages or $500 per violation, whichever is greater, and seek treble damages up to $10,000 per violation for Defendant's willful conduct pursuant to GBL § 350-e(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a. Certify the Nationwide Class and New York Subclass under Rule 23;

b. Award actual damages to Plaintiff and the Nationwide Class for Breach of Contract and Unjust Enrichment;

c. Award statutory damages of $500 per violation under GBL § 350 to Plaintiff and the New York Subclass;

d. Award treble damages up to $10,000 per violation for Defendant's willful and knowing conduct;

e. Enjoin Defendant from continuing its practice of bundling corporate fees with taxes;

f. Award Plaintiff's reasonable attorney's fees and costs; and

g. Grant such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 9, 2026

Respectfully submitted,

_*/s/ Brett R. Cohen*____________
Brett R. Cohen
Michael A. Tompkins
**LEEDS BROWN LAW, P.C.**
134 Mineola Boulevard – Second Floor
Mineola, NY 11501
(516) 873-9550
bcohen@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

Mark Rabin (NY Reg. No. 6232912)*
**BRYSON HARRIS SUCIU & DEMAY PLLC**
11 Park Place, 3rd Floor
New York, NY 10007
(206) 623-7292
mrabin@brysonpllc.com

J. Hunter Bryson (NC Bar No. 50602)*
**BRYSON HARRIS SUCIU & DEMAY PLLC**
900 W. Morgan Street
Raleigh, NC 27603
(919) 539-2708
hbryson@brysonpllc.com

*Counsel for Plaintiff and Proposed Class*

*Application for pro hac vice forthcoming*